IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS
FILED
DEC 1 0 2020
JAMES W. McCORMACK, CLERK
By:_____ IN OPEN COURT
DEPUTY CLERK

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | )  No. 4:20CR00193 BSM |
| | ) |
| GANELL TUBBS | ) |

**PLEA AGREEMENT**

The United States Attorney, for the Eastern District of Arkansas, Cody Hiland, by and through Patrick Harris and Jamie Dempsey, Assistant United States Attorneys, and Ganell Tubbs defendant, represented by the undersigned counsel, hereby agree to the following terms and conditions in connection with the above referenced proceedings.

1. **GUILTY PLEA:** The defendant will enter a plea of guilty to bank fraud, a violation of Title 18, United States Code, Section 1344(1), as set forth in Count 1 of the Indictment. The United States agrees to move for dismissal of the remaining counts against the defendant in this matter upon acceptance of the guilty plea. This is a Federal Rule of Criminal Procedure 11(c)(1)(A) and (B) plea agreement.

2. **ELEMENTS OF THE CRIME:** The parties agree the elements of bank fraud (Count 1) to which the defendant will plead guilty are:

    A. The defendant knowingly executed a scheme to defraud a financial institution to obtain moneys under the custody and control of a financial institution by means of material false or fraudulent pretenses;

    B. The defendant did so with intent to defraud; and

    C. The financial institution was insured by the Federal Deposit Insurance Corporation.

The defendant agrees that she is guilty of the offense charged and each of these elements is true.

3. **PENALTIES:**

   A. <u>STATUTORY PENALTIES</u>: The penalty for the charge set forth in Count 1 is not more than 30 years' imprisonment, a fine of not more than $1,000,000, not more than 5 years' supervised release, and a $100 special assessment.

   B. <u>SUPERVISED RELEASE</u>: Supervised release is a period of time following imprisonment during which defendant will be subject to various restrictions and requirements. Defendant understands that if defendant violates one or more of the conditions of any supervised release imposed, the defendant may be returned to prison for all or part of the term of supervised release, which could result in defendant serving a total term of imprisonment greater than the statutory maximum stated above.

4. **WAIVERS**: The defendant acknowledges that she has been advised of and fully understands the nature of the charges to which the plea is offered, the mandatory minimum penalty provided by law, if any, and the maximum possible penalty provided by law. The defendant further understands that by entering into this Agreement and Addendum, she is waiving certain constitutional rights, including, without limitation, the following:

   A. The right to appeal or collaterally attack, to the full extent of the law, all non-jurisdictional issues, including any forfeiture or restitution order, as follows:

   (1) the defendant waives the right to appeal all non-jurisdictional issues including, but not limited to, any issues relating to pre-trial motions, hearings and discovery and any issues relating to the negotiation, taking or acceptance of the guilty plea or the factual basis for the plea, including the sentence imposed or any issues that relate to the establishment of the

Guideline range, except that the defendant reserves the right to appeal claims of prosecutorial misconduct and the defendant reserves the right to appeal the sentence if the defendant makes a contemporaneous objection because the sentence imposed is above the Guideline range that is established at sentencing;

        (2)    the defendant expressly acknowledges and agrees that the United States reserves its right to appeal the defendant's sentence under Title 18, United States Code, Section 3742(b) and *United States v. Booker*, 543 U.S. 220 (2005);

        (3)    the defendant waives all rights to collaterally attack the conviction and sentence in any post-conviction proceeding, including one pursuant to Title 28, United States Code, Section 2255, except for claims based on ineffective assistance of counsel or prosecutorial misconduct;

        (4)    the defendant waives the right to have the sentence modified pursuant to Title 18, United States Code, Section 3582(c)(2);

        (5)    the defendant waives the right to appeal the Court's determination of the amount of restitution and subsequent restitution order, if any; and,

        (6)    the defendant waives the right to appeal the Court's determination of any forfeiture issues and subsequent forfeiture order, if any.

        B.    The right to plead not guilty or to persist in that plea if it has already been made, and the right to a speedy and public trial before a jury;

        C.    The right to be presumed innocent and to have the burden of proof placed on the United States to establish guilt beyond a reasonable doubt;

        D.    The right to confront and cross examine witnesses;

    E.  The right to testify in her own behalf if the defendant so chooses, or, the right to remain silent and not be compelled to testify, and to have that choice not used against the defendant;

    F.  The right to call witnesses and to require those witnesses to appear by issuing subpoenas.

    G.  Pursuant to Federal Rule of Criminal Procedure 11(b)(1)(O), the defendant understands that upon conviction, a defendant who is not a United States citizen may be removed from the United States, denied citizenship, and denied admission to the United States in the future.

  5.  **STIPULATIONS:**  The United States and the defendant stipulate to the following:

    A.  The parties agree that the base offense level is 7 pursuant to U.S.S.G. §2B1.1(a)(1).

    B.  The parties agree that the amount of potential loss was $1,518,887 to Celtic Bank and $414,375 to Cross River Bank for a total of $1,933,262 which is an increase of 16 levels pursuant to U.S.S.G. §2B1.1(b)(1)(I).

    C.  The parties agree that there is an increase of 2 levels for sophisticated means, pursuant to U.S.S.G. §2B1.1(b)(10)(C).

    D.  The defendant is eligible for a two-level reduction for acceptance of responsibility unless the defendant takes any action between the entry of the guilty plea and imposition of the sentence that is inconsistent with acceptance of responsibility. If the offense level is 16 or greater, the determination of whether the defendant is eligible for a third level reduction for acceptance of responsibility will be made by the United States at the time of sentencing.

E.  The parties stipulate that no other enhancements or reductions under Section 2B1.1, Chapter 3, or Chapter 5 of the Guidelines apply, other than those specifically set out in this Agreement and its Addendum.

F.  Neither party shall seek a departure or a variance from the recommended Guideline range at sentencing.

G.  The defendant specifically waives any and all challenges to the searches, seizures, arrests, statements, and forfeitures that have taken place as of the date of the execution of this plea agreement by the defendant in this investigation by any entity, and in any forum where the offense may be pursued and/or forfeiture may be sought. Defendant will assist in executing any requested waiver of challenge and relinquishment of rights to any and all assets that have been seized to date in this investigation by any participating agency or department, in any forum where the forfeiture may be sought.

H.  The defendant stipulates that the following facts are true:

As to Count 1, bank fraud –

> The Coronavirus Aid, Relief, and Economic Security (CARES) Act is a federal law enacted in or around March 2020, designed to provide emergency financial assistance to the millions of Americans who are suffering the economic effects caused by the COVID-19 pandemic. One source of relief provided by the CARES Act was the authorization of up to $349 billion in SBA-guaranteed forgivable loans to small businesses through the Paycheck Protection Program (PPP).
>
> In order to obtain a PPP loan, a qualifying business had to submit a PPP loan application signed by an authorized representative of the business. The PPP loan application required the business (through its authorized representative) to acknowledge the program rules and make certain affirmative certifications in order to be eligible to obtain the PPP loan. In the PPP loan application, the small business (through its authorized representative) had to state, among other things, its: (a) average monthly payroll expense; and (b) number of employees. These figures were used to calculate the amount of money the small business was eligible to receive under the PPP. In addition, businesses applying for a PPP loan had to provide documentation showing their payroll expenses.
>
> The PPP allows qualifying small-businesses and other organizations to receive loans with

5

a maturity of two years and an interest rate of 1 percent. PPP loan proceeds had to be used by businesses on payroll costs, interest on mortgages, rent, and utilities. The PPP allowed the interest and principal to be forgiven if businesses spent the proceeds on these expenses within eight weeks of receipt and used at least 75 percent of the forgiven amount for payroll.

Ganell Tubbs is the owner of two businesses: The Little Piglet Soap Company, LLC and Suga Girl Customs LLC. The Arkansas Secretary of State website indicates that Tubbs registered The Little Piglet Soap Company, LLC on 8/2/2013 and Suga Girl Customs LLC on 1/15/2018. Both businesses show a revoked status with the Arkansas Secretary of State. The businesses appear to be internet stores with no physical location. Both businesses list the residence of Ganell Tubbs, 9711 Herndon Road, Little Rock, AR, as the main address for the business. Both businesses also list 501-316-7266 as the main company phone number which is also Tubbs' personal phone number. Tubbs' email address is "ganelltubbs@gmail.com", the email address for The Little Piglet Soap Company, LLC is "thelittlepigletsoapcompany@gmail.com", and the email address for Suga Girl Customs LLC is "sugagirlcustoms@gmail.com."

Internet searches conducted on May 20, 2020, revealed that Suga Girl Customs, LLC had a Facebook page named "Suga Girl Customs" containing pictures featuring keychains, mugs, jars, tumblers, and t-shirts. No activity prior to 2020 was found. Internet searches also revealed an Etsy page entitled "SugaGirlCustoms" which was created in 2017. At the time of the internet search, there were twenty-nine sales since the creation of the page in 2017, and there were eleven items listed for sale.

Internet searches conducted on May 22, 2020, revealed that The Little Piglet Soap Company, LLC had an Instagram account named "littlepigletsoap" created in approximately September 2018, a Facebook page named "The Little Piglet Soap Company" created in October 2018, and a Twitter account named "Little Piglet Soap Co" created in September 2018.

On April 30, 2020, Tubbs submitted a PPP Borrower Application Form (SBA Form 2483) to Celtic Bank Corporation which was processed by BlueVine for her company, Suga Girl Customs LLC. The application listed Tubbs as the owner of the company, the business address as 9711 Herndon Road, Little Rock, AR, and the business phone as 501-316-7266 (which are also the home address and phone number of Tubbs). Based on the representations that Tubbs made and caused to be made on the SBA Form 2483, Suga Girl Customs LLC received a PPP loan for $1,518,887 from Celtic Bank, which was guaranteed by the SBA. The loan proceeds were deposited into a checking account at Navy Federal Credit Union (NFCU) ending in 6748 in the name of Ganell Tubbs with an address of 9711 Herndon Road, Little Rock, Arkansas on May 5, 2020.

Also on May 5, 2020, Tubbs submitted a PPP Borrower Application Form (SBA Form 2483) to Cross River Bank which was processed by Kabbage for her company, The Little Piglet Soap Company, LLC. The application listed Tubbs as the owner of the company, the business address as 9711 Herndon Road, Little Rock, AR, and the business phone as

6

501-316-7266 (which are also the home address and phone number of Tubbs). Based on the representations that Tubbs made and caused to be made on the SBA Form 2483, The Little Piglet Soap Company, LLC received a PPP loan for $414,375 from Cross River Bank, which was guaranteed by the SBA. The loan proceeds were deposited into the same checking account at NFCU ending in 6748 in the name of Ganell Tubbs on May 7, 2020.

Page two of the SBA Form 2483 includes a list of certification statements that must be initialed by the borrower. Tubbs initialed all of the certifications, including the one that reads as follows: "I further certify that the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects. I understand that knowingly making a false statement to obtain a guaranteed loan from SBA is punishable under the law...and, if submitted to a federally insured institution, under 18 USC §1014 by imprisonment of not more than thirty years and/or a fine of not more than $1,000,000." Tubbs signed and dated SBA Form 2483 on April 30, 2020 (for Suga Girl Customs LLC) and on May 5, 2020 (for The Little Piglet Soap Company, LLC).

The PPP application submitted to Celtic Bank stated that Suga Girl Customs LLC's average monthly payroll was $607,555. As additional support to the PPP application, Tubbs submitted what she claimed to be an Employer's Quarterly Federal Tax Return (IRS Form 941) for Quarter 1 of 2020, which included the months of January, February, and March 2020. On the purported (false) Form 941, Tubbs claimed that she had paid $1,385,903 in wages, tips, and other compensation. A total of $1,385,903 equals a monthly average of $461,967.67 for the quarter, which is less than the purported $607,555 monthly payroll claimed on the PPP application.

The PPP application submitted to Celtic Bank stated that Suga Girl Customs LLC had 210 employees. But the purported (false) Form 941 stated that Suga Girl Customs LLC had 105 employees.

As additional support to the PPP application for Suga Girl Customs LLC, Tubbs submitted a bank statement purported to be from NFCU with a statement ending date of 02/29/2020. The "Summary of Accounts" section lists a "Free Business Checking" account with account number ending in 6748, but the below section titled "Account Summary" lists a "Free Business Checking" account with account number ending in 6977. Records from NFCU do not have any accounts for Tubbs with account number ending in 6977 and the records indicate that account number ending in 6748 is an "EveryDay Checking" account in Tubbs' name. The purported statement submitted by Tubbs also listed an electronic debit for $615,192.60 dated 02/23/2029. This purported statement is false.

The second PPP application, which was submitted to Cross River Bank, stated that The Little Piglet Soap Company, LLC had an average monthly payroll of $165,750. As additional support for that PPP application, Tubbs submitted a false Transmittal of Wage and Tax Statements (IRS Form W-3) for 2020. The IRS Form W-3 is a transmittal

7

document used for businesses to submit W-2s that they issued to their employees for the work they performed in the preceding calendar year. The form is due annually by January 31, therefore the 2020 W-3 is due January 31, 2021. The false 2020 W-3 which Tubbs used is dated March 1, 2020.

The second PPP application, submitted to Cross River Bank, stated that The Little Piglet Soap Company, LLC had 36 employees. However, the document entitled "Paycheck Protection Program Addendum A" submitted by Tubbs stated that The Little Piglet Soap Company, LLC had 56 employees.

As additional support to the PPP application for The Little Piglet Soap Company, LLC, Tubbs submitted records from the Arkansas Secretary of State which listed the status of the business as "Good Standing." A search of the Arkansas Secretary of State records revealed that the status of The Little Piglet Soap Company, LLC was "Revoked."

Based on information provided to the FBI by NFCU, Tubbs' membership was only established on December 18, 2019, via the NFCU website. Tubbs' NFCU account ending in 6748 was not opened until April 28, 2020 using the IP address: 71.238.128.165. According to information provided by Celtic Bank, Tubbs submitted her PPP application for Suga Girl Customs LLC using the same IP address: 71.238.128.165 and listed her physical address as 9711 Herndon Road, Little Rock, AR.

On the PPP application for Suga Girl Customs LLC, Tubbs indicated that the business EIN was 83-2947056 and on the PPP application for The Little Piglet Soap Company, LLC, Tubbs indicated that the business EIN was 81-4842407. According to Internal Revenue Service (IRS) records, neither of those EINs were assigned to the businesses Tubbs claimed. IRS records also indicate that the tax documents that Tubbs filed in support of her PPP application were not filed with the IRS.

According to records from NFCU, after receiving the deposit of $1,518,887 from Celtic Bank/Bluevine on May 5, 2020, Tubbs moved the money to other accounts including:

On May 5, 2020
- $5,000 to NFCU joint account with Nyla Henderson ending in 2232
- $10,000 to NFCU joint account with Nyla Henderson ending in 6532
- A total of $999,999.95 to another Tubbs' NFCU account ending in 2182

On May 7, 2020
- Tubbs requested a check issued for $8,000 to be made payable to UAMS Student Financial Services

On May 12, 2020 and May 13, 2020
- Online debit card purchases totaling approximately $6,000 were made at Apple.com, MCM E-Commerce, Pandora Ecommerce, Michael Kors, Sephora, Northface, Nike, Fashionnova, Aramark, Deckers*Ugg, Stadium Goods, Kendra's Boutique, Door Dash, and Go Henry prepaid card.

On May 13, 2020
- A wire for $150,000 was sent to Bank of America account ending in 9203 under the name of Mercedes Smith. Smith is a niece of Tubbs and was told by Tubbs that she had won the lottery and that was how Tubbs could give $150,000 to her niece.

In June 2020, as a result of the prompt initiation of the federal criminal investigation, the two banks were able to get their moneys returned from the defendant's account maintained at the NFCU, with Cross River receiving $400,375 and Celtic Bank receiving $1,518,877.

On June 22, 2020, FBI agents obtained a search warrant and conducted a search of the defendant's house. During the search, the defendant admitted she submitted these PPP applications, received the moneys from the banks and that the applications were false.

The parties understand that the Court is not bound by these stipulations. The defendant further understands that if the Court does not accept this Plea Agreement, the defendant is not entitled to withdraw the guilty plea or otherwise be released from defendant's obligations under this Agreement and Addendum.

6. **SENTENCING GUIDELINES**: It is specifically understood by the defendant that the Sentencing Guidelines are not mandatory but are advisory, and that the Court is to consult them in determining the appropriate sentence. The defendant understands that the determination of the applicability of the Guidelines and of the appropriate sentence will be made by the Court. The defendant is aware that any estimate of the probable sentencing range under the Sentencing Guidelines that the defendant may have received from the defendant's counsel, the United States, or the Probation Office, is merely a prediction, not a promise, and is not binding on the United States, the Probation Office, or the Court. The United States makes no promise or representation concerning what sentence the defendant will receive and the defendant cannot withdraw a guilty plea, or otherwise avoid the defendant's obligations under this Agreement and Addendum, based upon the actual sentence imposed by the Court. The parties understand and agree that if the

guideline range is greater or less than the defendant or the United States expected it to be, and/or the sentence imposed by the Court is greater or lesser than anticipated, neither the defendant nor the United States will be allowed to withdraw, nor request withdrawal of, the guilty plea, nor be excused from any obligation under this Agreement and Addendum.

7. **ALLOCUTION:** The United States reserves the right to bring any and all facts which it believes are appropriate to the attention of the Court.

8. **COOPERATION IN THE SENTENCING PROCESS:**

    A. The defendant agrees to truthfully provide all information to the Probation Office as is needed for preparation of the pre-sentence report, including, but not limited to, criminal history information. The defendant shall voluntarily provide a complete and truthful written accounting of the defendant's criminal history to the Probation Office.

    B. The defendant agrees to execute all waivers necessary for the preparation of the pre-sentence report.

    C. The defendant understands and acknowledges that the defendant's obligation of disclosure regarding criminal history is not limited to arrests and convictions reported in computer databases, but requires the defendant to disclose all arrests and/or convictions, including any juvenile matters, regardless of whether the defendant believes the arrest/conviction counts under the Sentencing Guidelines.

    D. The defendant is required to comply with these obligations no later than the expiration of the date on which objections to the pre-sentence report are due.

9. **FINANCIAL MATTERS:**

    A. FINANCIAL STATEMENT: The defendant agrees to fully and truthfully complete a Financial Statement provided by the United States Probation Office.

10

B. <u>FINES</u>: The defendant understands that unless the Court determines that the defendant is financially unable to pay a fine, the Court must impose a fine pursuant to the Sentencing Reform Act of 1984.

C. <u>SPECIAL PENALTY ASSESSMENT</u>: The defendant agrees to pay to the United States a special assessment of $100.00 per count, as required by Title 18, United States Code, Section 3013. This special assessment is to be paid by bank cashier's check or money order as directed by the Court. Cashier's checks or money orders should be made payable to "Clerk, United States District Court."

D. <u>RESTITUTION</u>: The defendant acknowledges that restitution is mandatory pursuant to Title 18, United States Code, Section 3663A. The defendant agrees to the entry of an order of restitution for the full amount of the victims' losses, regardless of whether charges relating to such losses will be excluded or dismissed as part of this plea agreement. At this time, the United States and the defendant agree that the amount of restitution payable by the defendant is approximately $14,000 to the United States Small Business Administration.

E. <u>FINANCIAL INFORMATION</u>: The defendant agrees to fully disclose all assets in which he has any interest or over which the defendant exercises control, directly or indirectly, including those held by a spouse, nominee or third party. The defendant agrees to truthfully complete the financial statement form provided by the United States Attorney's Office for the Eastern District of Arkansas by the date of defendant's entry of a guilty plea, sign it under penalty of perjury, and provide it to the United States Attorney's Office for the Eastern District of Arkansas. The defendant agrees to provide updates with any material changes in circumstances, as described in 18 U.S.C. § 3664(k), which occur prior to sentencing, within seven days of the event giving rise to the changed circumstances. Prior to sentencing, the defendant agrees to notify

the Assistant United States Attorney and the Financial Litigation Unit of the United States Attorney's Office for the Eastern District of Arkansas before the defendant transfers any interest in property with a value exceeding $1,000 owned directly or indirectly, individually or jointly, by the defendant, including any interest held or owned under any name, including trusts, partnerships, and corporations. The defendant expressly authorizes the United States Attorney's Office to obtain a credit report on him. The defendant agrees to provide waivers, consents or releases requested by the United States Attorney's Office to access records to verify the defendant's financial information. The defendant also authorizes the United States Attorney's Office to inspect and copy all financial documents and information held by the United States Probation Office.

10. **DOUBLE JEOPARDY AND SUCCESSIVE PROSECUTION**: The United States Attorney for the Eastern District of Arkansas will bring no further charges against the defendant for any acts or conduct arising out of the events described in the Indictment, which is the subject of this action, unless the defendant breaches this Agreement and Addendum.

11. **RECORDS**: The defendant hereby waives all rights, whether asserted directly or by a representative, to request or receive from any department or agency of the United States any records pertaining to the investigation or prosecution of this case, including without limitation any records that may be sought under the Freedom of Information Act, 5 U.S.C. Section 552, or the Privacy Act of 1974, 5 U.S.C. Section 552a.

12. **ASSET FORFEITURE AND FINANCIAL ACCOUNTABILITY**:

    A.    Defendant agrees to forfeit to the United States, under Title 18, United State Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), all property, real or personal, which constitutes or is derived from proceeds traceable to the offenses

    B.    Defendant agrees to hold the United States, its agents and employees

harmless from any claims whatsoever in connection with the seizure or forfeiture of property covered by this agreement. Defendant further agrees that forfeiture of assets described above shall not be counted towards satisfaction of any special assessment, fine, restitution, or any other penalty the court may impose.

    C. Defendant agrees not to assist any other individual in contesting the forfeiture of the assets described above and agrees that there was reasonable cause to seize those items. Defendant also agrees to prevent the disbursement of any and all assets described above if the disbursements are within Defendant's direct or indirect control.

    D. Further, Defendant hereby withdraws all previously filed claims to, waives all interest in, and consents to the forfeiture of the above-described assets. The United States has the discretion to determine whether the forfeiture will be accomplished through an administrative or judicial proceeding, which includes any criminal, civil, state, or federal action. Defendant agrees to consent to the entry of orders of forfeiture for such property and waives the requirements of Federal Rule of Criminal Procedure 32.2 regarding notice of the forfeiture in the charging instrument, announcement of the forfeiture at sentencing, and incorporation of the forfeiture in the judgment. Defendant acknowledges that she understands that the forfeiture of assets is part of the sentence that may be imposed in this case and waives any failure by the court to advise him of this, under Rule 11(b)(1)(J), at the time her guilty plea is accepted. Defendant waives any right she may have to: (1) receive notice of any non-judicial forfeiture proceeding within the time frames provided in Title 18, United States Code, Section 983, and (2) have the property returned to her if notice is not sent within those prescribed time frames.

E.   Defendant further agrees to waive all constitutional and statutory challenges in any manner (including direct appeal, habeas corpus, or any other means) to any forfeiture carried out in accordance with this Plea Agreement on any grounds, including that the forfeiture constitutes an excessive fine or punishment. Defendant agrees to take all steps as requested by the United States to pass clear title to forfeitable assets to the United States, including, but not limited to, the execution of the Consent Decree of Forfeiture and the completion of any other legal documents required for the transfer of title to the United States.

13.   **CIVIL CLAIMS BY THE GOVERNMENT:**   Except to the extent otherwise expressly specified herein, this Agreement and Addendum does not bar or compromise any civil or administrative claim pending or that may be made against the defendant, including but not limited to tax matters.

14.   **EFFECT OF DEFENDANT'S BREACH OF PLEA AGREEMENT AND ADDENDUM:**

A.   Defendant acknowledges and understands that if the defendant violates any term of this Agreement and Addendum, engages in any further criminal activity prior to sentencing, or fails to appear for any subsequent proceeding including sentencing, the United States shall have, in addition to all other rights and remedies otherwise available, the right to:

(1)   terminate this Agreement and Addendum; or

(2)   proceed with this Agreement and Addendum and

(a)   deny any and all benefits to which the defendant would otherwise be entitled under the terms of this Agreement and Addendum; and/or

(b) advocate for any sentencing enhancement that may be appropriate.

B. In the event the United States elects to terminate this Agreement and Addendum, the United States shall be released from any and all obligations hereunder. The defendant acknowledges and understands that the agreement of the United States to dismiss any charge is conditioned upon final resolution of this matter. If this Agreement and Addendum is terminated or if the defendant's conviction ultimately is overturned, then the United States retains the right to reinstate any and all dismissed charges and to file any and all charges which were not filed because of this Agreement and Addendum.

C. The defendant hereby knowingly and voluntarily waives any defense based upon the applicable statute of limitations and/or the Speedy Trial Act, for any charges reinstated or otherwise filed against the defendant as a result of defendant's breach of this Agreement and Addendum, so long as the United States initiates any otherwise time barred action within one year of termination or revocation of this Agreement and Addendum.

D. In the event that the Agreement and Addendum is terminated or if the defendant successfully moves to withdraw his plea, any statement made by the defendant in negotiation of, or in reliance on this Agreement and Addendum, including any statements made in the course of a proffer, this Agreement, the stipulations in paragraph 5 of this Agreement, and the plea colloquy:

(1) may be used in the United States' case in chief and to cross examine the defendant should she testify in any subsequent proceeding; and/or

(2) any leads derived therefrom may be used by the United States.

The defendant waives any and all rights to the contrary and shall assert no claim under the United States Constitution, any statute, or any rule of procedure or evidence to the contrary, including Federal Rule of Evidence 410 and Federal Rule of Criminal Procedure 11(f). Defendant has been advised of her rights pursuant to Federal Rule of Evidence 410 and Federal Rule of Criminal Procedure 11(f) and waives these rights.

15. **PARTIES:** This Agreement and Addendum is binding only upon the United States Attorney's Office for the Eastern District of Arkansas and the defendant. It does not bind any United States Attorney outside the Eastern District of Arkansas, nor does it bind any other federal, state or local prosecuting, administrative, or regulatory authority.

16. **MISCELLANEOUS:**

    A. **MODIFICATION:** No term or provision contained herein may be modified, amended or waived except by express written agreement signed by the party to be bound thereby.

    B. **HEADINGS AND CAPTIONS:** Subject headings and captions are included herein for convenience purposes only and shall not affect the interpretation of this Agreement and Addendum.

    C. **WAIVER:** No waiver of a breach of any term or provision of this Agreement and Addendum shall operate or be construed as a waiver of any subsequent breach or limit or restrict any other right or remedy otherwise available. Any waiver must be expressly stated in writing signed by the party to be bound thereby.

    D. **RIGHTS AND REMEDIES CUMULATIVE:** The rights and remedies of the United States expressed herein upon any breach hereunder by the defendant are cumulative

and not exclusive of any rights and remedies otherwise available to the United States in the event of any breach of this Agreement and Addendum by defendant.

      E.    <u>JOINT NEGOTIATION</u>:  This Agreement and Addendum has been mutually negotiated by the parties hereto, and any uncertainty or ambiguity existing herein shall not be interpreted against any party by reason of its drafting of this Agreement and Addendum, but instead shall be interpreted according to the application of the general rules of interpretation for arms-length agreements.

17.    **<u>NO OTHER TERMS</u>:**  This document and the Addendum completely reflect all promises, agreements and conditions made between the parties, constitute the entire agreement between the parties and supersedes any and all prior agreements or understandings between the parties, oral or written, with respect to the subject matter hereof.

18.    **<u>APPROVALS AND SIGNATURES</u>**:

      A.    <u>DEFENDANT</u>:  The defendant has read this Agreement and Addendum and carefully reviewed every part of it with her attorney. The defendant understands and voluntarily agrees to the terms and condition of this Agreement and Addendum. Further, the defendant has consulted with her attorney and fully understands her rights with respect to the provisions of the United States Sentencing Guidelines which may apply to this case. No other promises or inducements have been made to the defendant, other than those expressly contained in this Agreement and Addendum. In addition, no one has threatened or forced the defendant in any way to enter into this Agreement and Addendum. Defendant further acknowledges that defendant has entered into this Agreement and Addendum, consciously and deliberately, by defendant's free choice, and without duress, undue influence or otherwise being forced or

17

compelled to do so, and this Agreement and Addendum constitutes the legal, valid and binding obligation of the defendant, fully enforceable against defendant in accordance with its terms. Finally, the defendant is satisfied with the representation of her attorney in this case.

    B. <u>DEFENSE COUNSEL</u>:  Defense counsel acknowledges that she is the attorney for the defendant, and that she has fully and carefully discussed every part of this Agreement and Addendum with the defendant. Further, defense counsel has fully and carefully advised the defendant of the defendant's rights, of possible defenses, and of the consequences of entering into this Agreement and Addendum, including the possible consequences of not complying with this Agreement and Addendum. To counsel's knowledge, the defendant's decision to enter into this Agreement and Addendum is an informed and voluntary decision.

DATED this 10th day of December, 2020.

                                                    CODY HILAND
                                                    United States Attorney

                                                    By: PATRICK HARRIS (85069)
                                                    By: JAMIE DEMPSEY (2007239)
                                                    Assistant United States Attorneys
                                                    Post Office Box 1229
                                                    Little Rock, Arkansas 72203
                                                    (501) 340-2600
                                                    Pat.Harris@usdoj.gov
                                                    Jamie.Dempsey@usdoj.gov

GANELL TUBBS
Defendant

MOLLY SULLIVAN
Attorney for Defendant